Eastern District of Kentucky
FILED
JUN 29 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-305-GWU

MARGARET BOWMAN,                                                                       PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applicationS for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

> Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Bowman

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Margaret Bowman, filed applications for DIB and SSI on November 16, 1993, alleging disability beginning June 4, 1991 due to a ruptured disc, carpal tunnel syndrome in both arms, swollen ankles, and bad nerves. (Tr. 38, 129). After a protracted series of administrative denials and remands, including a remand from this Court in November, 2002 at the request of the defendant (Tr. 431-5), an Administrative Law Judge (ALJ) issued a final decision on December 23, 2003 (Tr. 411-28). The ALJ found that Mrs. Bowman had "severe" impairments consisting of a bulge at L4-L5 and a small disc herniation at L5-S1 with no evidence of nerve root compression, carpal tunnel syndrome, mild atherosclerotic disease, a history of hypertension, a dysthymic disorder, and an anxiety disorder. (Tr. 417). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Bowman had retained the residual functional capacity to perform a significant number of jobs existing in the economy for the entire period from her alleged onset in 1991 to the date of the decision on December 23, 2003

7

and, therefore, was not entitled to benefits. (Tr. 424-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, high school education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 563). She: (1) could sit six hours in an eight-hour day, and stand or walk six to eight hours (with "normal breaks"); (2) could occasionally bend, squat, crawl, climb, and reach above shoulder level; (3) could occasionally push and pull with the upper extremities and occasionally perform fine manipulation; and (4) could understand, remember, and carry out simple to moderately complex tasks in "a relatively low to moderate stress environment" which did not require more than a superficial interaction with the public. (Tr. 564). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 564-5). A secondary hypothetical question elicited additional jobs. (Tr. 568-569).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff's Date Last Insured (DLI) was December 31, 1996 (Tr. 412), meaning that she needed to establish disability prior to this date in order to be entitled to DIB. Her SSI application, however, is not affected. The DLI is of

8

particular significance in the unusual circumstances of the present case, which covers a very long period of potential disability (i.e., since 1991).

There are no opinions regarding functional capacity from treating sources in the Court transcript, but there are a series of consultative examinations. The hypothetical factors addressed to the vocational expert were supported by opinions expressed after consultative examinations by Dr. Stephen Lamb in May, 2000 (Tr. 375) and Dr. Mark Carter in 2003 (Tr. 495), among the most recent of the evaluations. From the face of their reports, it does not appear that either Lamb or Carter were provided records from the period prior to the DLI (Tr. 371-374, 490-493), and their findings did not specifically "relate back" to this period or, necessarily, to any other prior period. Seemingly, Dr. Lamb's authorization to perform what was for the plaintiff an additional consultative examination implied that the plaintiff's condition as of 2000 or 2003 was not necessarily what it had been earlier. See 20 C.F.R. Section 404.1519a.

All of the physicians who gave opinions before 1999 provided or implied greater limitations than found by the ALJ. Specifically, Dr. Christa Muckenhausen examined the plaintiff in August, 1993 and opined that she was permanently and totally disabled (Tr. 150-4, 252), Dr. Harold Bushey also opined that she was permanently and totally disabled after a June, 1993 examination (Tr. 158-9), and Gopal Rastogi concluded that she was "not fit for gainful employment" after a July, 1994 examination (Tr. 160-1). The ALJ rejected the conclusory opinions of these

physicians because they were not supported by sufficient objective evidence. Dr. Muckenhausen examined the plaintiff again in April, 1995, and concluded that she would be limited to "very light duty" activities and would have difficulty doing fine manipulative type work, "even secretarial." (Tr. 265-70). The ALJ also rejected this opinion due to a lack of objective studies, which Dr. Muckenhausen had indicated were needed. (Tr. 418).

The report of Dr. James Templin, from September 1994, however, did contain a detailed physical examination as well as a review of objective studies including an MRI of the lumbar spine showing a bulge at L4-L5, and a small herniation at L5-S1 with a suspicion that the herniated disc was touching the right S1 nerve root, and an EMG/NCV report from June, 1991 showing bilateral carpal tunnel syndrome, worse on the right than the left. (Tr. 170-4). Objective findings on examination included tenderness over both shoulders, increased pain with adduction and abduction of both arms against resistance, lumbar spine tenderness, a positive straight leg raising test on the right, and poor balance on performing deep knee bends. (Tr. 173). Dr. Templin concluded that the plaintiff could perform light level exertion, with standing and walking less than three hours in an eight-hour day, sitting less than six hours in an eight-hour day, with the option of sitting or standing at will, needed to avoid the repetitive use of hand and foot controls, should never stoop, crouch, or bend, could occasionally climb, balance, kneel, and crawl, and needed to avoid riding in vibratory vehicles. (Tr. 177-8). While the ALJ stated that Dr. Templin's restrictions, particularly

Bowman

his restriction on standing and walking, were inconsistent with the objective clinical findings in the MRI results and "appear to be based on claimant's reports of pain," it is not evident from Dr. Templin's report that he was basing his restrictions on subjective factors or an inaccurate medical history, as the ALJ also implied. In fact, in view of the other contemporaneous opinions from medical sources, Dr. Templin's restrictions do not appear extreme.

Additionally, as part of a consultative examination performed in 1998, while Ali Zadeh did cite greater functional capacity than the doctors had previously, he also cited some limitations (such as a five hour total sitting restriction) which were not, strictly speaking, compatible with the hypothetical question. (Tr. 287).

Thus, given the fact that a tremendously long period was involved, that Dr. Templin in particular cited very objective evidence in support of his 1994 assessment, that all the physicians prior to 1998 appeared to cite significantly greater restrictions than were cited in the hypothetical, and that even an opinion from 1998 indicated greater restrictions regarding certain activities than were cited in the hypothetical, the situation requires some degree of detailed testimony from a medical expert, *particularly on the issue of the possibility of a closed period of benefits for the period prior to the year 2000.*

The Court notes in passing that the issue of the plaintiff's functional educational level was at issue in some of the prior administrative remands. The plaintiff's reading, spelling, and arithmetic levels were tested by several

11

psychologists. The most recent testing showed that the plaintiff had a high school level reading ability, which was consistent with her numerical grade. (Tr. 360, 500). However, all of the psychological testers found a lower level of arithmetic ability, ranging from the sixth to the seventh grade. (Tr. 182, 254, 292, 360). The ALJ stated in her decision that she had considered the issue carefully, and concluded that the high school diploma received by the plaintiff created a "presumption of a high school education" and the presumption "has not been rebutted." (Tr. 425). While there is substantial evidence from the recent examining psychologists to support the plaintiff's high school level reading ability, the Commissioner's regulations at 20 C.F.R. Section 404.1564 and 416.964 provide that a numerical grade level may not represent a claimant's actual educational abilities, although the numerical grade level will be used if there is no other evidence to contradict it. The evidence in this case does contradict the conclusion that the plaintiff has a high school level ability to perform arithmetic. Therefore, this issue should be taken into account in framing any new hypothetical question.

The decision will be remanded for further consideration.

This the 29 day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12